And we'll turn to the last case to be argued, U.S.A. v. Hopper, Dowdell, Kinsey, Smith and Long. My understanding is that only attorney Schoenfeld has reserved rebuttal time. Is that right? All right. That's fine. Okay. Mr. Perry. I just want to be clear who you're representing. Oh, I'm sorry. My name is Jeffrey Perry. I represent Mr. Hopper. And if it may please the court, your honor, I am intensely aware that I only have four minutes. And if you have questions for me, it might be four minutes better spent. But I do have a couple of things I'd like to mention, but I would like to address what concerns the court. Go ahead. Okay. Sir, I would like to revisit the issue of relevant conduct, if I could, and just mention that the Concepcion case, and while I'm sure the court is familiar with that line of cases, it does leave the door open for an alternate finding here. And there's some other matters on some other issues. Judge, the one closest to my heart, I try to come here with some sort of academic argument, and I very much enjoy it. But I'm afraid the vast majority of my brief kind of sounds like a rant. Your honor, it's very difficult to explain without almost sounding like I'm throwing a temper tantrum, just how unfair things were during the course of this trial. I want you to know, I want you to look me in the eye when I say this, that I'm absolutely serious about that. Judge, this is the only time in my life I've even heard of two attorneys standing up on the first day of trial and telling the judge during what is a standard operating procedure, we are simply not ready. And believe me, the reception was kind of ugly. Your honor, the influx of- Not ready in terms of what? We weren't ready for anything, your honor. You haven't gotten enough discovery? Judge- You got discovery months before, and even the last item that you're asking for was two weeks before the trial, but most of the discovery was in place. Your honor, it's very, very difficult to describe. Literally, it's beyond imagination how much discovery there was, and we were still getting it. I think the last time was 30 days before trial. We were already behind. I had already told the judge that I was not physically capable of reading this all. I'm not talking about if I put in a few extra hours, I would have gotten it done. If I did nothing else for 30 days, we weren't going to get there. Didn't you have another counsel with you? I didn't get alternate- Excuse me, I didn't get a second chair until just a couple of weeks before trial. Your honor, I'm telling you, it was too late. We weren't going to get there. Judge, I'm not bragging, but I've had a great deal of experience at complex litigation. I brought this to the judge's attention, and his answer to me was, well, that's one of the hazards of being a solo practitioner. Being a solo practitioner has nothing to do with it. You simply can't stay awake for a month and get all of this done. That's how bad it was. I feel like I need to apologize, your honor. I usually come to you with all kinds of sites and that sort of thing, but basically this is a long complaint. Again, if you have questions about it, I'd be glad to address them. One of the things that went through my mind as I was sitting here in the gallery is, I don't know what issues I might have brought before you if we actually had a chance to read everything that was given us. Your honor, as of today, I have not been through everything that was given us. It was that voluminous. Also, I need to- Well, didn't you have an opportunity after the trial was over? You had the material to point out how this conduct that you complain of actually prejudiced you. You could have come back and said, look, I never read X because I didn't have time. And if I had, my client would have been acquitted or would have had a better chance for acquittal. Well, your honor, we did beat one murder charge. No. And the other one was- I understand that, but you're saying you were prejudiced by what the judge did. You weren't able to get through it. But after the fact, you have the opportunity to say, had he allowed me to get through everything, I didn't get to this pile of evidence. And lo and behold, in that pile of evidence, there's something that would have made a big difference. Your honor, with the greatest of respect, I mean this sincerely, the court was not receptive to that. We had made arguments to that for nine days, and the court was not receptive to that. It was a highly- let me put it this way. It was a highly negative bench. Can I leave it at that? Yeah. What I'm talking about to us is showing that somehow the evidence that you did not- would have made a difference. You could make the motion preliminarily before the district judge to preserve it, but then that would be your argument here. But it isn't- you didn't make this argument. Your honor, I think if you go through the record- in fact, no, I can't- Why aren't we just confined to what the record is and what the arguments are that you've made? You're making kind of a broader argument here today. Respectfully, sir, I don't think so. Judge, we did try to make- we tried very hard to make a record of- in fact, I have lost track of the number of times I went to the judge and said, we're simply too far behind, we're not going to make it. And I was literally threatened. I don't know how much farther I'm supposed to push this. Threatened? I'm sorry, sir? Threatened? Yes, sir. Threatened by what? At one point, I made a- jeez, judge, we're going back two years now. But at one point, I made a motion and I was told that if I did anything like this again, I wouldn't be paid for it. I've never had a judge say that to me in my life. Also, your honor, to be perfectly honest, I've never had a judge question my integrity in my life. It's something I take pretty seriously. I'm sorry, sir, I didn't come here to call people names. I hope that's- That's okay. And I'm not comfortable with it. But this got- when I say this got ugly, it got ugly. Thank you. All right. All right. Let's turn to Mr. Moynihan. Okay, thank you, sir. I appreciate it. So, Mr. Moynihan, were you there from the beginning of this ugly experience? Your honor, I represent Mr. Dowdell, who is the lead defendant in this case, but he took a plea earlier on in the case. So I wasn't subjected to any of this trial. And he wasn't required or requested to testify at that trial either. Unfortunately, though, there were some things that happened at the trial that did impact Mr. Dowdell's sentence, and that had to do with this pseudo count of the indictment involving aggravated assault. And I guess I want to start by- Did the government agree with you on that? They do. And I just wanted to make clear that I wanted to join in Mr. Kinsey's argument about that, because it wasn't an argument that I made in my brief. Do you also want to join Mr. Kinsey's argument with respect to whether certain facts should be in the criminal history as against the relevant conduct? That's correct, your honor. I think we made a very similar argument in that regard. Well, the difference is they made an ITOR argument and you haven't, but I take it you're joining the ITOR argument as well. Yes, Judge. I guess the highlight that I would bring to the court in this case is it's often that we come to sentencing with contested issues about the pre-sentence report or the findings of fact, mostly to relevant conduct. And despite the fact that we might ask for a hearing, we might highlight all the discrepancies in the facts as we see them, that the court will need to determine, we very seldom now get an opportunity to be heard about that. I know that the facts underlying this are important. And even on remand, I know the government is arguing that the court should still not have a factual determination, not make another, have a hearing about it, rely on its previous decision, and now use these relevant facts against the client in a different way other than the pseudo count. I still think that we should have a factual hearing about whether the government has met their burden. And that's often lacking. So what do you want from us? Well, I would like it sent back for resentencing. And I think that the court should at least hold a hearing to determine these facts. And what are those facts that you want? Well, the facts have to do with the counts seven and eight, this incident that they alleged that my client and that Mr. Kinsey were involved in, these aggravated assault facts that were brought up during the trial. Of course, we weren't participants in the trial. We didn't have an opportunity to examine those witnesses. Tell us- The government concedes that remand for resensing is necessary because of this, right? That's correct. Yeah, so it's going to go back. It's going to go back, but the government doesn't concede that we should have a factual hearing about whether or not the government's met their burden of proof as to these facts. They only concede that the guideline calculation was inaccurate. They don't concede that the facts were inaccurately determined. And that's what I think that this court should do. And what is it that this hearing on remand would look like? Well, it seems to me that the burden is on the government to prove, at least by preponderance of the evidence, that these facts took place. And the custom appears to be that if probation says it, then they took place. And I think that it should be the court. And in this instance, the probation department said the court should have to decide this. There's a dispute as to these facts. And the court really didn't make a decision about it. Or in its failure to articulate its decision, just ended up adopting what the probation department says. So tell us what this hearing would look like. You would have the probation officer on the stand who would review the matter, presumably. Well, I would predict that the hearing would involve the witnesses who made these allegations against my client and his participation in these acts. The probation officer would simply be testifying to triple hearsay as to what she may have read in a police report that the government provided to her. Yeah, but this is not a trial on the question of guilt or innocence. This is a trial that would have to do with what's appropriate to be considered in sentencing. You're not precluded from sentencing on the basis of hearsay. I agree that we're not precluded on the basis of hearsay, but I think that- The issue itself is the assault, right? That's what we're talking about. The so-called thing that the judge found aggravated assault. Correct. Yeah, so it's the circumstances of that conduct. That's what you're concerned about. Exactly. Okay, so you would broaden it to not just the guideline calculation, but also to look at the conduct itself. Yes, and what gets me is that even if, as defense counsel, we lay out all the factual disparities and we get to court and we request a hearing about it, the hearing request is denied. We don't need to have a hearing because these aren't important facts. I'm not going to rely on them for sentencing. It's simply, have you anything more to say, and we're going to move on, and I'm going to adopt the pre-sentence report. It doesn't seem to me that the arguing with the probation department in this case, which we did a lot of. We worked through these factual allegations with the probation department extensively, but they can't make the determination. The court needs to make the determination, and I don't feel that the court gave due process to my client in appreciating that the increase in his sentence that would come from this finding of fact without real hearing on those facts. And have you given anyone an idea of what that hearing would look like, what witnesses you would wish to hear from? Well, I think it would be important to hear from the two main witnesses that their government relied upon, both at the trial and relying upon to put my client into the factual scenario that they painted. There's just two. I think they're Johnson and Chapman. And we already have a record of their testimony, correct? We do. We do. Unfortunately, though, Mr. Perry had an opportunity to cross-examine them as to their testimony relevant to Mr. Hopper, but I didn't have an opportunity to cross-examine them or ask questions that would pertain to Mr. Dowdell and their accusations against him. Wait, I'm a little confused. This was, oh, I see. So this was at your proceeding. Did you ask for a hearing? I did. Okay. At the sentencing. At the sentencing. At the sentencing, correct. And what did you ask for in particular? I asked for a hearing regarding the facts of the allegations to the aggravated assault so that the court could make a determination if the two points applied. Okay. Thank you. Thank you. Michelle Barth for Kinsey. Good afternoon, Your Honors. May it please the Court. Michelle Barth on behalf of Mr. Tim Norris Kinsey. Now, you're in agreement that with respect that there has to be a remand for resentencing. Yes. Yes, Your Honor, I am. And given that we have this going back for a sentencing remand, it may also make sense to address the issue of Kaiser before the district court as well. The issue of? The Kaiser issue raised in the brief. If this is going to happen. I'm sorry, Your Honor. That's the thing that interests me most. I'd like you to address it. I'm interested in it, too, and I'm happy to talk about that issue. In fact, I plan to focus on it. Under Kaiser, this court may not defer to the commission's interpretation of its own provision without first exhausting the rules of statutory construction. I think that the guideline provision for a 1.2 is crystal clear on its plain terms, prevents scoring, relevant conduct. I don't think there's really any question on this record that the 2015 conviction was relevant conduct. The government made some arguments about how this might have been a personal use amount of crack cocaine. That's not supported by the pre-sentence report. In this case, Mr. Kinsey was not a user of crack cocaine and had not been so for over a decade. So that's just not borne out by the record. The amounts involved, we don't know what the quantity is. I'm not sure if it was used in the offense level, but just focusing on Kaiser, assuming that the court agrees that the 2015 conviction is relevant conduct, I don't think we need to go beyond the plain language of guideline provision for a 1.2 to determine that it shouldn't have scored for criminal history points. Unfortunately, it had scored for four criminal history points in this case, which actually shifted Mr. Kinsey's criminal history category from criminal history category five to six. So it is a substantial sentencing error. I think Kaiser is pretty— Basically, your argument is that the guidelines provide that you should understand the relevant conduct and that the application note, which you deny but I think is a strong argument that it says that it can be listed under criminal history, is inconsistent with the guideline, and then under Kaiser, the guideline wins out. That's the nub of your argument, right? That's precisely the argument. So I think it's pretty straightforward, and you've laid it out in a nutshell. So I don't think that we can ignore Kaiser's application in this case. Now, obviously, this court does not have to reach that issue because upon a full remand, then this issue could be fully fleshed out and would not be before the court on plain error. So that would be our request, and that is the remedy that we would be seeking. But I'm happy to field any additional Kaiser questions. Have you discussed this with the government in terms of the possibility of a hearing on remand that three of you asked for? I have not personally discussed it with the government. I know that my co-counsel, Ms. Schoenfeld, has discussed with the government about how it pictures a remand. To me, it makes most sense to have all of these issues before the sentencing court so that if it came back, in fact, this panel could just retain this case. It could come back, if need so, after such issues are fleshed out before the district court in the first instance. My understanding, based on their discussions, is that the government had contemplated a more limited remand. And so our position is that a full remand makes more sense given the criminal history category issue, which is significant because it shifts my client's category down one, and, of course, the conceded error on the aggravated assault issue. And I think that would be the cleanest way of handling it. I did want to mention this has nothing to do with my issue, but in the District of Vermont, we often have witnesses testify about contested factual matters, and those hearings are routinely granted in my district. Thank you. Ms. Schoenfeld. Good afternoon. May it please the court, Gwen Schoenfeld on behalf of Riddell Smith. My client, there are only three remaining issues on appeal. Two of them the government conceded, one about the racketeering activity under 2E1.1, and the other is the guideline error in the supervised release calculation. The third issue that we don't agree on with the government has to do whether there should be a complete remand or a limited remand. And that relates to the issue of whether or not my client should get a consecutive or concurrent sentence with his state sentence, which is related to everything in the federal case as well. The reason I believe a complete remand is necessary is because these crimes and the sentencing were so interrelated. If you look at the facts, there were 14 defendants. Seven of them had concurrent consecutive issues with state crimes. My client was the only one who did not get any concurrent time, but I think the reason that happened was because the judge gave some form of relief where there seemed to be some duplication. And in my case, I think he tried to give that form of relief with the supervised release violation. But as the government has conceded, the supervised release violation guideline calculation was wrong. So in the district court, they calculated his range is 37 to 46 months, but in fact, it was only 24 months. So when the court gave him a break, or not even a break, just gave him a reduction to 13 months, it looked like the court was giving him 24. But in fact, it only gave him 11. Counsel, this may well be, but how can we do that, get into the district court's mind? I mean, if a district court once informed that the sentence that it gave on one thing was incorrect for other reasons, you may make motions or whatever, but I don't know how we can step in and say, this should be confirmed rather than consecutive, because we think the district court had something else in mind, but it's not something we can do. I agree with you entirely, and that's why in my reply brief, I argued that this court doesn't even have to address the issue of consecutive versus concurrent time, given the government's concessions, because really what it's about is the sentencing plan. And the district court should have the discretion in the first instance to facilitate or fashion its own sentencing plan. And the Supreme Court has said in Pepper that when you undo one part of the integral sentencing plan, it could upset the whole structure. So it is okay in those cases where you do have interrelated sentencing to remand in its entirety. And in this case, as Your Honor just pointed out, I don't know if that's exactly what the court did. But in this case, the court should have the option of configuring those three aspects in the first instance, especially since government now has conceded that two of those deserve a remand. So this is really just giving the court the tools it would otherwise have to fashion its sentencing plan. Thank you very much. Oh, the only other point I want to make, my client, he finishes his federal sentence at the beginning of June of 2024. If this case is remanded, I do not know what the sentencing court will do. But just in terms of how this impacted his sentencing, he was sentenced at the top of his guideline range. So on the Racketeering Act issue, the top of the guideline range is now, with the correction, would be 71 months instead of 78. So that's a seven-month difference. On the supervised release, the court thought it was giving him a 24-month break, but actually gave him 11. And again, I don't know what the court would do, but those are significant amount of months, and he only has two years left. So I just want to emphasize the importance of the timing of a decision from this court. Thank you. May it please the court. Rajiv Dosanjh for the government. One or two. My plan is just to address the contested issues, unless the court has to. I'm having trouble hearing you. I'm sorry. I'm sorry. Is this better? Yes. My plan here was just to talk about the contested issues. Isn't there a button on the side there that pushes the whole thing out? Yeah. Should I go higher? That's right. Yeah, you can bring that up. Okay. Okay. So as far as the issues that are contested on appeal, I'd like to start first with Mr. Kinsey's arguments concerning the criminal history category. The government does not believe it's necessary for this court to reach the Kaiser issue. Under the guidelines 4A1.1 and 1.2, it's Mr. Kinsey's burden, both in the district court and on appeal, especially with plain error, to establish that this September 2015 conviction for possessing a small amount of crack cocaine was part of the charged offense here. And Mr. Kinsey has not met that burden. So the court could decide that issue without even going to the application notes for the racketeering offense. The court correctly counted that as a prior sentence and not as part of the current offense. And if you look at the stipulations in the plea agreement, Mr. Kinsey stipulated to a broad range of quantity of 28 grams to 114 grams being foreseeable to him, both in terms of his own actions and in terms of the actions of other people. Counsel, I understand that the question of whether it is relevant conduct or not itself is a complicated one on which the district court may not have focused because there was no focus on the Kaiser issue. And so before it, it would not have met. And what they're asking us to do is to send it back to the district court to consider the whole issue, to consider so that you can argue then this wasn't relevant conduct and the whole thing goes away, or the district court may, focusing on this, say, no, I do think it's relevant conduct, but then we have to decide the question of whether there is an inconsistency. And if there is an inconsistency, whether Kaiser wins out. I heard them say, look, this was decided by a court that wasn't focusing, that was making any number of other mistakes, and we should just send it back and let them consider it. Your Honor, I think the problem there is this court's very well-established precedent of plain error review, and that's what we're under. This issue is not raised in the district court. It was the defendant's burden both in the district court and here on appeal because of plain error to establish error. And as I was arguing, under the criminal history category, even putting aside the application note and the Kaiser argument, before you get to that, you have to think whether it was error for the district court to treat the 2015 crack cocaine conviction as a prior sentence, and that is where they do not meet their burden. The same issue comes up with different forms of relevant conduct in various of the other cases, at least three, and even in the case which is before us on an Anders motion. But you, the government, has not objected to bringing in things which were not raised. As to others, is it equally easy from your point of view with respect to these other cases? Your Honor, I'm sorry, I had a little trouble hearing you, but I think as far as the other... I'm sorry, I had a little trouble hearing you on the question, but I think what you're getting at is, if you go past Mr. Kinsey to Mr. Dowdell's claim, does he raise the Kaiser issue? Do you have to decide it for him? Well, several of them have hardly raised it as well. I mean, Kinsey raises it most elegantly. Several others now are kind of jumping in. Some aren't even quite jumping in. But my question is, is the issue of relevant conduct, which you say was adequately decided because it wasn't relevant conduct in Mr. Kinsey's case, equally easy to decide in the other case? Well, I think, Your Honor, if, again, I think this is where the standard review and this Court's waiver rules would come in. Mr. Dowdell had a conviction that was charged in the indictment that was also treated as a prior sentence under the application note in 2E1.1. The problem is that his argument on appeal is that the Court abused its discretion by not granting the departure authorized by the application note. So Mr. Dowdell is actually relying on the application note. He's not saying it's invalid. He's saying the Court should have exercised its discretion to grant a departure under that. Now he's saying that I'm adopting these other arguments, but that was not anywhere in his brief. It wasn't argued below. So I think the Court does not need to send this back for the Kaiser issue, especially where in terms of Mr. Dowdell and Mr. Kinsey, there's no manifest injustice here because the evidence and the plea agreements make clear, and the evidence presented in the PSR and looking at the whole record, the confessions of other defendants, that this organization, this enterprise used at least, was involved in at least 28 grams that was foreseeable to the other defendants of crack cocaine, that that trafficking activity involved at least 28 grams. There's really no basis to suggest that even if it was error to include the amounts of crack cocaine, the small amounts of crack cocaine in Mr. Dowdell's case and the vanishingly small amount in Mr. Kinsey's case because we don't know the amount, although it was charged in the least severe state charge without any distribution, there's no showing of any injustice here or effect on the final sentence. So I don't think the Court needs to go out of its way to preserve issues that were waived or forfeited in the District Court and that were not presented in Mr. Dowdell's case on appeal to send these back because the sentence, the record shows that that impact, it would not have an impact on the quantity of crack cocaine. In terms of the relevant conduct issue with Mr. Dowdell and the issue of the September 8th and 9th retaliatory shootings, again, I think the record is very clear that the Court, both in the PSR, the facts are laid out very specifically as to Mr. Dowdell's involvement in that, both the planning and then also being on the phone while the actual shooting was occurring and asking, according to eyewitness testimony, that he wants to hear something. I want to hear you shoot someone. Again, this Court has also been very clear that a defendant does not have a right to open up a new testimonial hearing at sentencing to challenge the credibility determinations made by the District Court based on its own viewing of the trial evidence and the PSR. And again, in terms of what impact would occur here, even if he was not involved in the September 8th and 9th retaliatory shooting, the question here, I think, is the weapons enhancement. And there's ample evidence here, ample basis in the record to hold Mr. Dowdell accountable for the weapons enhancement. As the Court found, that's an issue that was decided below. He pled guilty to knowing that this enterprise used guns to protect its territory and its drug trafficking activity. You're speaking of? Mr. Dowdell's, and in terms of what impact, whether it's necessary to have this hearing. Let me ask you just in the form of just an understanding of where we stand in this very complicated case. How many of these defendants, in your view, are entitled to re-sentencing? Three. It's Mr. Kinsey, Mr. Dowdell, and Mr. Smith. Now, sorry. Let's just stick with those for a moment. Now, Long is not before us on any request for a remand. Right. And the error that the two, if it was an error to include the aggravated assault as a pseudocount for Mr. Long, if you read the PSR, they did not score that. It didn't have any impact on his sentence. But counsel. Hold on a second, Judge. I just want to get a few things straight in my mind, if I may. Now, Mr. Hopper's counsel began with an extended meditation regarding the situation that he confronted as defense counsel. Would you like to comment on that while we have an opportunity? Your Honor, I think- I'll give you extra time. Don't worry about it. Thank you. Your Honor, we laid this out in our brief, I think, in exhaustive detail. He was provided the discovery in time to be used in a trial. I think the point that the court emphasized is that even now, he has not pointed to any specific evidence that he can, that was deprived of him or that he couldn't read or didn't know about that would have had any effect on the jury's verdict. The discovery was overseen by the district court. It gave him extensions when necessary. It also appointed new counsel, which is an unusual step in a trial like this. You mean additional counsel? Sorry, additional counsel. Yes. A second counsel. And in terms of one of the issues here was the DNA evidence that was disclosed. So you would not agree that the volume of material available to counsel was such as to overwhelm an experienced defense lawyer? No, Your Honor, and I think, you know, we couldn't put the discovery in front of the court, but the initial discovery disclosure 10 months before trial included the bones of this case, the real center of this case. It was organized by defendant. It was, as far as his ability to consult with his client, again, he fails to show that there is an insufferable burden for him to have to travel to the jail here. Nothing prevented him from reviewing the protected materials himself. Speaking of counsel, describing the nature of those materials to Mr. Hopper, consulting with him on the areas of concern, and organizing the protected materials to facilitate his review of key evidence, and also bringing it to the jail for him to look at, again, because he had a second chair, that could have happened even if Mr. Perry was preparing for trial. Again, I think we would strongly disagree that there is anything unfair about the discovery disclosures here. And we think that we did our best to get the evidence to him in a timely fashion, and we did. Well, why don't you describe for us what the hearing before the district court would look like on remand. So we would propose that this court follow its default rule, that you have a guidelines error with the multi-count adjustment. Now, in Mr. Kinsey's case, that resulted in a one-level increase. I think the biggest increase here was two levels for, I think, Mr. Smith or Mr. Dowdell. So we would propose a limited remand where the court recalculates the guidelines range, does not reopen these issues that were waived or forfeited below. The court should decide those issues on appeal under plain error. The court should recalculate the guidelines range with the new offense levels, decide whether it was going to impose the same sentence, and it could choose not to. The other thing, I think, as far as just to clarify with Mr. Smith, and whether a consecutive or a concurrent sentence is appropriate, we are not arguing that the district court couldn't reconsider. We're not arguing that this be foreclosed. We're simply saying we're responding to the claim on appeal that it was an abuse of discretion for the judge under these circumstances to put them to, as the sentence existed then, to run them consecutively. The judge, I think— But doesn't that mean that we are remanding for re-sentence in a somewhat broader way than simply saying recalculate? I mean, if we're saying you can consider other things, then what you just said before about the nature of our remand seems a little bit at odds. If I were a district judge and I was told, do just this, I would find it a bit difficult to do this other thing which you said you wouldn't object to their doing. Well, Your Honor, I think there's a difference between— About what it is, you know, the district court made some mistakes. I'm just trying to figure out a way of having it go back and have the district court decide what—how to correct them in a way which doesn't open up things too much. Your Honor, I agree, and I think— But I do think there's a difference between re-figuring out the guidelines, which is one component of a sentencing decision. I think even in a limited remand where this court says recalculate the guidelines, once the court has that new input into a sentencing decision that's corrected, it can assess the impact of that new guidelines range and come up with a different kind of sentence. That's all we're saying, that once it figures out what the new guidelines range in— So you're saying that you can say to the court, once this is with you, you can consider other things with respect to the sentence that you gave? Other things, not including the issue—the guidelines range issues that were— No, no, I'm— Right. I have one other question, and that's the unfortunate Mr. Long. He made the same Keiser—or he doesn't make the same Keiser argument, but the same Keiser argument would be subject to him. If we were to disagree with you and have the district court reconsider and discuss that, should that be done even with this one who put in an Andrews motion? Your Honors, I would disagree just because in his case it's very clear from the PSR that the Keiser mistake—and I'm not conceding, obviously, that there is one— but if the application note to the RICO guideline is somehow invalid, and, again, I would strongly urge the court that you do not need to reach that question on this appeal, this is what I think the standards of review mean. We hear you, Your Honors. Right. But I think it's very clear from the PSR that that scoring did not affect his final guidelines range. So I think it's not necessary in his case to reach out to that issue. And I think you can apply the waiver in his case, as we argue. All right. Do you think—would we be issuing an order preventing the district court? Suppose Kinsey goes back from resentencing and another issue is raised that we say— but would the district court be precluded from hearing any claim by them that these other issues that they've raised to us really ought to be reopened in sentencing? Because the district court should reconsider the sentence in the light of those arguments? Your Honor, I think, given the default rule, the mandate default rule here, I think it would be precluded. If the court were to— It's defaulted. You're saying it's been defaulted, and that's that. And that's that. And I think, again, I think under plenary review, I think we've established that there's no manifest injustice here in what occurred. Because in terms of the impact of this offense, first, again, you don't need— I think it was properly—the 2015 crack cocaine possession by Mr. Kinsey was properly considered a prior sentence, and they have not met their burden on appeal of showing that it was part of the instant offense. And in terms of the other issues, I think in terms of the Kaiser issue, I think you don't even need to reach that on appeal because it was— in Mr. Kinsey's case, it was properly considered as a prior sentence. In Mr. Dowdell's case, I think that argument has been waived now on appeal. And, again, I think also we would strongly disagree that Kaiser has in any way overruled Stinson. And I think I want to make—I would emphasize that this court has considered the Kaiser issue. It didn't make it— That's another big issue. If you want to start arguing about that, I take your main argument that we don't need to get into that complicated issue on which various courts have split. Right, Your Honor. I would just like just to respond very quickly to the idea that this court has never considered that. I think this court in the United States v. Wynne, which is 845F Appendix 63, another panel of this court made it very clear that you have considered whether Kaiser unsettles previous precedent, including—I think here it's obvious that Kaiser, from its own terms, did not overrule Stinson. It wasn't intending to— Was that an assumptive order? I'm sorry, what's that? Was that an assumptive order? It was not, Your Honor. It was not—you're right, Your Honor. It was—the Kaiser decisions never— Then don't tell us we doubled it. Because summary orders don't do that. Please. Well, I'm just—I'm responding only to the claim— You can cite them, but don't tell us that we started something when the only thing is a summary. Please. Your Honor, I was not suggesting that you've decided this issue. I'm just responding to the claim that this court has never considered the impact of it. And I think it was an issue that was briefed extensively in the TAB case as the Wien panel has noticed. So I'm not saying that this issue is decided in any manner. We're not bound, but you say it's persuasive. Right, and I think that it's just responding to the factual claim that this court has never thought about Kaiser. And I think Kaiser itself is very clear that it's not overruling Stinson and these other cases involved in seminal deference. All right, thank you very much. Thank you. We have one more. We have total 35 questions. Thank you. Just a very brief response. I'm not sure that the government and I disagree on the concurrent consecutive issue as to where it is today. If I understood the government correctly, he seems to be saying he's not saying the district court can't consider it. He does object to my argument that it was substantively unreasonable. But where we are today, if it's getting remanded, and I made this argument before I knew he was conceding. I made this argument in my opening brief that if either of the sentences, either of the guideline errors resulted in a resentencing, that that issue should also be addressed regardless of whether there was substantive unreasonableness, only because it was part of the sentencing plan and because the sentences were so related. So I think the government and I disagree on whether it's substantively unreasonable. And I'm saying I don't think we even need to go there, given the concessions. And that's consistent with what I argued before. Thank you. We reserve decision and we are adjourned. The court is now adjourned.